UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| WASHINGTON STATE AUTO DEALERS INSURANCE TRUST, | Case No. C07-1182 MJP |
|---|---|
| Plaintiff/Cross-Claimant, | |
| v. | ORDER ON LUMENOS INC.'S MOTION FOR SUMMARY JUDGMENT |
| AON CONSULTING, INC., | |
| Defendant/Third-Party Plaintiff, | |
| v. | |
| LUMENOS, INC., | |
| Third-Party Defendant. | |

This matter comes before the Court on Third-Party Defendant Lumenos, Inc.'s ("Lumenos") motion for summary judgment against Plaintiff Washington State Auto Dealers Insurance Trust ("WSADIT") and Third-Party Plaintiff Aon Consulting, Inc. ("Aon"). (Dkt. No. 60.) After reviewing the motion, WSADIT's response (Dkt. No. 68), Aon's response (Dkt. No. 71), Lumenos's reply (Dkt. No. 75), all documents submitted in support thereof, and the balance of the record, and after hearing oral argument from the parties on October 14, 2008 (see Dkt. No. 79), the Court GRANTS the motion in part and DENIES the motion in part. Aon's claims against Lumenos are DISMISSED with prejudice. WSADIT's claim for professional negligence

ORDER ON SUMMARY JUDGMENT MOTION— 1

is also DISMISSED with prejudice. WSADIT's claim for breach of contract survives this motion. The Court's reasoning is set forth below.

## Background

WSADIT is a health benefits plan that contracts for excess loss insurance coverage. During the relevant time, Lumenos was WSADIT's third-party administrator ("TPA"), responsible for processing member claims. In 2003, WSADIT hired Aon as a consultant on excess loss insurance coverage.

In August 2005, WSADIT plan member R.P. suffered a heart attack and received medical treatment at Sacred Heart hospital resulting in costs over $500,000. Sacred Heart submitted a claim for repayment on October 20, 2005 to First Choice (Lumenos's processing subcontractor), and resubmitted the claim on November 29, 2005. Both claims were rejected because First Choice's system had not been updated to accept a valid procedure code. In March 2006, Sacred Heart sent the bill directly to Lumenos, but Lumenos did not enter the bill into its system. The claim was finally paid in May 2006 after First Choice corrected the processing error. WSADIT's former excess loss coverage, provided by Symetra, expired on April 30, 2006 and did not cover the Sacred Heart bill because it had not been paid before that date.

In April 2006, Aon managed the transfer of WSADIT's excess loss coverage from Symetra to American International Group, Inc. ("AIG"). AIG required disclosure of high risk claimants on the Excess Loss Disclosure Statement. Failure to disclose such individuals and potential claims would preclude stop loss coverage for those claims. On April 20, 2006, Aon employee Jan Reed sought information on high risk claimants from Lumenos. Aon then used the information submitted by Lumenos to complete the Disclosure Statement and submitted it to AIG.

The Excess Loss Disclosure Statement did not include information about R.P.'s Sacred Heart bill. After Lumenos processed and paid R.P.'s claim in May 2006, AIG refused to pay the Sacred Heart claim because it had not been identified on the Disclosure Statement.

ORDER ON SUMMARY JUDGMENT MOTION— 2

WSADIT alleges that Aon was responsible for providing AIG with information about R.P.'s claim during the underwriting process. WSADIT filed suit against Aon for professional negligence, breach of fiduciary duty, and breach of contract. In an order issued on September 24, 2008, this Court dismissed WSADIT's tort claims as barred by the economic loss doctrine. (Dkt. No. 74.)

On January 25, 2008, Aon brought a third-party complaint against Lumenos alleging breach of contract and professional negligence. (Dkt. No. 23.) On April 30, 2008, WSADIT filed a cross claim against Lumenos also alleging breach of contract and professional negligence. (Dkt. No. 37.) Aon and WSADIT contend that Lumenos's failure to process R.P.'s claim in a timely manner resulted in the denial of coverage for that claim. Lumenos now moves for summary judgment against both WSADIT and Aon. (Dkt. No. 60.)

**Analysis**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Material facts are facts "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

1. Dismissal of Aon's Claims

Because no contract exists between Aon and Lumenos, Aon's breach of contract claim must be dismissed.[1] Aon's professional negligence claim must also be dismissed because Aon has not established a professional relationship with Lumenos that gives rise to a duty of care. See Injury at Sea v. Pacific Claims, Inc., No. 53623-1-I, 2004 WL 1490890, at *1 (Wash. App.

---

[1] Aon effectively withdrew its contract claim in its response to Lumenos's motion, admitting that "Aon's claims against Lumenos sound in tort." (Aon Response at 24.)

ORDER ON SUMMARY JUDGMENT MOTION— 3

Ct. July 6, 2004) (holding that a plaintiff could not bring a professional negligence claim when he had no professional relationship with the defendant). Instead of providing evidence establishing a professional relationship with Lumenos, Aon offers only a vague argument that a duty exists because both Aon and Lumenos acted as agents for the same principal. Without any authority showing that such a relationship is sufficient to establish a professional duty of care, Aon's professional negligence claim must be dismissed.

2. WSADIT's Contract Claim

Though Lumenos and WSADIT exchanged an Administrative Services Agreement (the "Agreement"), the written Agreement was never signed by either party. Nonetheless, an implied in fact contract exists because both parties acted as if the contract was in effect – Lumenos performed duties described in the Agreement and WSADIT paid for those services. Milone & Tucci v. Bona Fide Builders, 49 Wn.2d 363, 368 (Wash. 1956) ("[a] true implied contract is an agreement of the parties arrived at from their acts and conduct").

Despite their failure to execute the document, the parties agree that they operated under the terms of the Agreement insofar as WSADIT paid Lumenos to act as its TPA responsible for processing member claims. (See Reply at 6; WSADIT Response at 8.) WSADIT alleges, and Lumenos admits, that this contractual duty also required that the claims be processed in a timely manner. (See VanBronkhorst Dep., Spoonemore Decl. Ex. A at 19, 119.) WSADIT's breach of contract claim alleges that Lumenos failed to process the Sacred Heart claim in a timely manner. No provision in the Agreement defines "timely."

Lumenos first argues that R.P.'s claim was timely processed because Sacred Heart's provider agreement allows a provider twelve months after treatment to submit a claim for reimbursement – a time period that is "standard practice throughout the industry." (Mtn at 5.) Lumenos's focus on the twelve-month time period is misleading. The provider agreement dictates the deadline by which a health care provider must submit a claim, not the amount of time a TPA has to process a claim once it has been submitted. The record indicates that Sacred

ORDER ON SUMMARY JUDGMENT MOTION— 4

Heart submitted R.P.'s claim in October 2005 – only two months after treatment. At issue is how quickly the TPA was required to process that submitted claim.[2]

Washington law requires carriers to pay "ninety-five percent of the monthly volume of clean claims [within] thirty days of receipt." WA ADC 284-43-321. Lumenos's agreement with its processing subcontractor echoed this goal by stating that clean claims should be paid within thirty days following receipt. (Spoonemore Decl. Ex. C at 58.) However, neither of these guidelines provide a strict rule for timely processing. Without a clear determination of what constitutes timely claims processing, this issue cannot be decided on summary judgment.

Lumenos argues that, even if it is found to have breached the contract with WSADIT by failing to process the Sacred Heart claim in a timely manner, it cannot be held liable for the resulting damages because they were not foreseeable. In response, WSADIT presents a triable issue of fact – whether industry standard required Lumenos to be aware of the stop loss insurance policy period and to pay all submitted claims by the policy end date, thereby preventing gaps in stop loss coverage. Lumenos's 30(b)(6) witness contradicts the assertion, stating, even though Lumenos understood "that Symetra was only obligated to pay on claims over the stop loss deductible that were paid during the Symetra policy period," it was "not important to Lumenos to know when a stop loss insurance policy expires for a particular client." (Levin Decl. Ex. F at 29-30.)

The record indicates that WSADIT had the option to either renew the Symetra policy on May 1, 2006 or change stop loss carriers altogether. (See Levin Decl. Ex. C at 1.) Aon's expert contends that "Symetra most likely would not have reimbursed the R.P. claim if WSADIT decided to renew with Symetra and the R.P. claim was submitted for reimbursement after the May 1, 2006 renewal date." (Id. at 1-2.) If, as WSADIT contends, industry standard dictates

---

[2] Sacred Heart's provider agreement was with First Choice, one of Lumenos's subcontractors responsible for processing claims. The parties do not dispute that Lumenos is liable for the actions of its agent, First Choice.

ORDER ON SUMMARY JUDGMENT MOTION— 5

that a TPA should be aware of a stop loss policy period and the potential for a gap in stop loss coverage, it might also be true that a TPA has a duty to avoid a gap in coverage by processing and paying submitted claims before the policy period expires. Because facts concerning whether Lumenos knew or should have known of the potential for a gap in stop loss coverage on claims paid after the Symetra policy ended on May 1, 2006 are in dispute, the Court cannot decide whether the damages resulting from Lumenos's alleged failure to process the Sacred Heart claim in a timely manner were foreseeable.

Additionally, there exists a factual dispute as to whether Lumenos provided complete and accurate information in response to Aon's request for information to include on the AIG Disclosure Report. Lumenos admits that it "had an obligation to provide accurate information to Aon," (B. Niehus Expert Report, Levin Decl. Ex. D at 8), but insists that it "provided all information requested by Aon or AIG" (Mtn at 8). Lumenos relies primarily on deposition testimony given by Aon employee Brad Baker stating that he was not aware of any information requested by Aon that Lumenos did not provide. (Payton Decl. Ex. D at 44.)

Aon's disclosure request is found in an email sent on April 20, 2006 from Aon employee Jan Reed to Ami Camardo of Lumenos, stating:

> Here is the most current list we have of large claims. Will you please provide – or pass this on to the person who can – diagnosis and prognosis for claims over $50,000. The stop loss is out for bid so I need this ASAP.

(Payton Decl. Ex. F.) Attached to that email were several spreadsheets containing lists of members and their claims. (Aon-CF0016 – Aon-CF0022.) R.P. was included on at least one of those lists, but the Sacred Heart bill was not reflected in his claims total.

Lumenos insists that Aon "requested only a report from Lumenos identifying members who had claims paid during the previous plan year." (Lumenos Mtn at 7.) The parties argue extensively over whether Aon's request encompassed both "paid" and "incurred" claims and whether there is in fact a difference between "paid" and "incurred" claims. (See Mtn at 7; Aon Response at 15-16; Reply at 12.) Lumenos argues that "paid" and "incurred" claims are the

ORDER ON SUMMARY JUDGMENT MOTION— 6

same, that they are "clean claims accepted by the system and approved and ready for payment." (Lumenos Reply at 12.) Yet Lumenos employee Amy Robards describes an incurred claim as one where "services have been rendered, yet the claim either has not been submitted yet, or the claim has not been finalized and paid at that point." (Levin Decl. Ex. L at 26-27.)

As stated above, Lumenos did provide Aon with some information about R.P.'s claims. Aon's expert report states that Lumenos's disclosure to Aon included both claims that had been paid and claims that had been submitted but not yet paid. (Levin Decl. Ex. B at 3.) It is unclear to the Court whether Ms. Reed's request encompassed submitted but unpaid claims. However, Lumenos is not entitled to summary judgment on this issue because it has not shown that the Sacred Heart bill did <u>not</u> fall within the information requested by Aon.

Ultimately, Lumenos argues that Aon's disclosure request was deficient because it "would not capture members ... <u>whose providers had not yet submitted claims</u>." (Mtn at 8 (emphasis added).) Lumenos thereby implies that the Sacred Heart claim was not reported to Aon because it fell within a category of information that had not been requested. In fact, R.P.'s provider, Sacred Heart, <u>had</u> submitted the contested claim, once in October 2005 and again in November 2005, long before Aon requested information from Lumenos. Further, the record suggests that the claim was submitted correctly and that the processor erred in rejecting it. Given this evidence, the Court cannot conclude that Lumenos was not required to report the Sacred Heart claim to Aon in response to the April 20, 2006 request, and Lumenos's motion on this issue must be denied.

3. <u>Aon's Professional Negligence Claim</u>

As conceded by counsel in oral argument, WSADIT's tort claim is barred by the economic loss doctrine. Washington's economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract because tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." Alejandre v. Bull, 159 Wn.2d 674, 682 (2007). If the doctrine

ORDER ON SUMMARY JUDGMENT MOTION— 7

applies, "the party will be held to contract remedies, regardless of how the plaintiff characterizes the claims." Id. The damages sought here are strictly economic in nature.

Any duty Lumenos had to process claims in a timely manner and to provide an accurate and complete report of claims information to WSADIT (or to WSADIT's agent, Aon) arises from the contract between WSADIT and Lumenos. As such, WSADIT's recourse against Lumenos for breach of this duty is limited to a claim for breach of contract. (See Dkt. No. 74, Court's Order on Aon's Mtn for Summ. J.)

**Conclusion**

The Court GRANTS the motion in part and DENIES the motion in part. Aon's claims against Lumenos are DISMISSED with prejudice. WSADIT's claim for professional negligence is barred by the economic loss doctrine and is therefore DISMISSED with prejudice. WSADIT's breach of contract claim survives this motion because issues of material fact remain concerning: (1) whether Lumenos processed the Sacred Heart claim in a timely manner; (2) whether Lumenos should have known the potential for a gap in stop loss coverage for any claims paid after May 1, 2006; and (3) whether Lumenos provided complete and accurate information to Aon in response to Aon's April 20, 2006 disclosure request.

The Clerk is directed to send a copy of this order to all counsel of record.

Dated: October 22, 2008.

Marsha J. Pechman
U.S. District Judge